# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

| | | |
|---|---|---|
| JOSEPH HAGAN JAMES, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | CV416-169 |
| | ) | CR405-263 |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## **REPORT AND RECOMMENDATION**

Guilty-plea convicted of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(e), Joseph Hagan James has filed a 28 U.S.C. § 2255 motion asserting that he was improperly sentenced under the Armed Career Criminal Act (ACCA).[1] *See* doc. 1 (indictment); doc. 16 (plea agreement); doc. 17 (judgment for 180 months' incarceration). He seeks to exploit the new rule announced in *Johnson v. United States*, 576 U.S. __, 135 S. Ct. 2551 (2015), and made retroactive by *Welch v. United States*, 578 U.S. __, 136 S. Ct. 1257 (2016), to neutralize his enhanced[2] sentence. He also contends his counsel was

---

[1] The Court is citing to the criminal docket in CR408-225, and all page numbers are those imprinted by its CM/ECF docketing software.

[2] The enhancement was based upon James' prior convictions for possession with

ineffective for failing to locate alibi witnesses, object to evidence relied upon in his conviction, or object to the enhancement of his sentence. Doc. 24.

I. ANALYSIS

A. Three ACCA Predicates

The ACCA imposes an enhanced sentence upon § 922(g) felon-with-a-gun offenders who have at least three prior convictions "for a violent felony or a serious drug offense." 18 U.S.C. § 924(e)(1). Plain vanilla, felon-in-possession convictions fetch a maximum 10 year sentence, *see* 18 U.S.C. § 922(a)(2), while the ACCA enhancement mandates a 15 year minimum (and a maximum of life). 18 U.S.C. § 924(e)(1).

The *Johnson* decision held that that the "residual clause" of the ACCA, which provided a nebulous catchall for "violent felonies," was unconstitutionally vague. *See* 135 S. Ct. 2551, 2557. It said nothing, however, about ACCA enhancements predicated on convictions for "serious drug offenses" or "violent felonies" as defined by ACCA

---

intent to distribute cocaine, distribution of cocaine, and burglary. *See* Presentence Investigative Report (PSR) at ¶¶ 24, 28-30.

2

provisions other than the residual clause. *See, e.g., Johnson*, 135 S. Ct. at 2563 ("Today's decision does not call into question application of the Act to the four enumerated offenses, or the remainder of the Act's definition of a violent felony," much less its definition of "serious drug offense"). After *Johnson*, enhancements based on those offenses remain valid. *United States v. Tinker*, 618 F. App'x 635, 637 (11th Cir. 2015).

### i. Drug Offenses

James disputes that his ACCA-enhanced sentence survives *Johnson*, doc. 24, but the invalidation of the residual clause has no effect on an enhancement based on his "serious drug offenses." *See In re Williams*, 826 F.3d 1351, 1356 (2016) (prior convictions for a "felony drug offense" are "not even arguably affected by *Johnson*'s holding regarding the ACCA's residual-clause definition of a violent felony."). A "serious drug offense" is defined as "an offense under State law, involving . . . distributing, or possessing with intent to . . . distribute a controlled substance . . . for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii).

Movant was convicted under O.C.G.A. § 16-13-30(b) for possessing with intent to distribute and distributing cocaine, a Georgia Schedule II

controlled substance. PSR at ¶¶ 24, 28-30; doc. 27 at 17-19 (indictment and guilty plea for distribution of cocaine), 34-36 (indictment and guilty plea for possession with intent to distribute cocaine); *see* O.C.G.A. §§ 16-13-30(b), (d) (version in effect from 1990-2012) (making it "unlawful for any person to manufacture, deliver, distribute, dispense, administer, sell or possess with intent to distribute any controlled substance" and making such a violation "with respect to a controlled substance in Schedule I or narcotic drugs in Schedule II" punishable "by imprisonment for not less than five years nor more than 30 years" on the first offense); *id.* at § 16-13-26 (list of Schedule II controlled substances).

James' distribution of cocaine and possession with intent to distribute cocaine convictions under Georgia law match the § 924(e) definition of a "serious drug offense" because they were: (1) offenses under state law, (2) for distributing or possessing with intent to distribute a controlled substance, and (3) punishable by a maximum term of imprisonment of ten years or more. 18 U.S.C. § 924(e)(A)(ii); *see* Ga. L. 1980, p. 432, § 1; Ga. L. 1985, p. 149; *Dennard v. State*, 265 Ga. App. 229, 229 (2004) (cocaine qualifies as narcotic drug); *see also United*

4

*States v. Safeeullah*, 453 F. App'x 944, 948 (11th Cir. 2012); *United States v. Davies*, 391 F. App'x 822, 825 (11th Cir. 2010). These offenses clearly remain qualifying "serious drug offenses" for ACCA sentence-enhancing purposes. That's two.

### ii. Burglary

The ACCA specifically enumerates the offense of "burglary" as one of four crimes that qualify as a "violent felony." 18 U.S.C. § 924(e)(2)(B)(ii). When it enacted the ACCA, however, Congress referred only to the "generic" version of the four enumerated crimes. *United States v. Gundy*, 842 F.3d 1156, 1161 (2016). The generic version of burglary that Congress had in mind has these three elements: "(1) an unlawful or unprivileged entry into, or remaining in, (2) a building or other structure, (3) with intent to commit a crime therein." *Id.* at 1164-65. While the Georgia burglary statute incorporates each of these elements, it expands the "locational element" of generic burglary to criminalize not only the unlawful entry into "a building or other structure" but also entry into vehicles, railroad cars, watercraft, and aircraft. *Id.* By including these alternative locational

5

elements, the Georgia burglary statute becomes "non-generic." *Id.*[3]

Georgia's burglary statute effectively creates three distinct crimes, only one of which meets the generic definition of burglary. *Gundy*, 842 F.3d at 1162; *id.* at 1166-68 (the Georgia burglary statute has alternative locational elements, effectively creating several different crimes, that are "divisible" into the generic version (which matches the

---

[3] As *Gundy* notes, from 1980 until July 1, 2012, the Georgia burglary statute provided as follows:

> "A person commits the offense of burglary when, without authority and with the intent to commit a felony or theft therein, he enters or remains within the dwelling house of another or any building, vehicle, railroad car, watercraft, or other such structure designed for use as the dwelling of another or enters or remains within any other building, railroad car, aircraft, or any room or any part thereof . . . ."

*Gundy*, 842 F.3d at 1164 & n. 3 (quoting Ga. Code Ann. § 16-7-1(a) (2011)). James' Georgia burglary conviction, like Gundy's, was based on the statute as it existed from 1980 until 2012. *See* doc. 27 at 44-51.

*Gundy* examined the text of the Georgia burglary statute in light of the Supreme Court's decision in *Mathis v. United States*, 579 U.S. __, 136 S. Ct. 2243 (2016). *Mathis* instructed the lower courts on how to interpret and apply the ACCA's enumerated crimes provision when confronted with a state statute (like Georgia's) that has "disjunctive phrasing," thus creating an issue as to whether that statute precisely aligns with the generic offense Congress intended. *Id.* at 2249, 2253. When faced with such a state statute, the court must decide whether the disjunctive language creates (1) multiple crimes that are "divisible" into those alternative *elements* that match the generic version of the ACCA enumerated crime and those that do not, or (2) a single crime that has an "indivisible" set of elements and simply lists various alternative factual *means* of committing that single offense. *Gundy*, 842 F.3d at 1162. An indivisible statute must exactly match the generic crime or else it cannot count as an ACCA predicate offense. *Id.* A divisible statute, on the other hand, may suffice as an ACCA predicate if it can be determined that the defendant was convicted of the generic crime rather than an alternative, non-generic crime. *Id.*

ACCA) and the non-generic versions (which do not)). Because the Georgia statute has such a divisible structure, the Court applies the "modified categorical approach" to determine whether the defendant's prior burglary convictions match (or do not match) the generic definition of burglary that Congress had in mind. *Id.* at 1167; *see Descamps v. United States*, 133 S.Ct. 2276, 2284-85 (2013). The Court relies upon a limited class of documents associated with the defendant's state conviction (*e.g.*, the indictment, jury instructions, or plea agreement and colloquy) to determine whether the charged crime matches up with the elements of the generic crime. *Id.* at 1168 (quoting *Shepard v. United States*, 544 U.S. 13, 26 (2005)).

The *Shepard* documents from James' prior burglary conviction establish that it was generic burglary, and therefore qualifies as a violent felony under the ACCA. *See* doc. 27 at 43-55. The state prosecutor charged, and James admitted through his guilty plea, that he had entered a specific "building" without authority and with the intent to commit a theft therein. Doc. 27 at 46-47 (1994 indictment alleging that James, "without authority and with the intent to commit a theft therein, enter[ed] a building, to wit: Welsh Pawn Shop, located at

7

5521 Abercorn Street"), 48 (guilty plea). Because James entered a guilty plea admitting that he had entered a specific building without permission, and had done so with the intent to commit a theft therein, James' prior Georgia burglary conviction meets the elements of generic burglary. *Gundy,* 842 F.3d at 1168-69; *Safeeullah,* 453 F. App'x at 948. It, therefore, qualifies as a violent felony under the ACCA's enumerated crimes clause and neither *Johnson* nor its progeny affect his enhanced sentence. And that's three ACCA predicates.

### B. Ineffective Assistance of Counsel

James faults his attorney for not preventing enhancement of his sentence based on invalid predicate offenses, objecting to admission of the firearm at issue, or locating "alibi witnesses" that could have presented exculpatory evidence. Doc. 26 at 6-9. These claims, however, are untimely. *Johnson* has no impact on the validity of his sentence. It follows that movant cannot look to § 2255(f)(3) to define when his one-year statute of limitations began to run. Instead, he's relegated to § 2255(f)(1), which dictates that the clock started the day his conviction became final (January 28, 2006) and ran out on January 28, 2007 (one

year later).[4] These claims are therefore untimely, and his "cursory, conclusory, and self-serving mention of actual innocence" does not suffice to toll the deadline, "especially given his sworn admission of guilt in this case."[5] Doc. 27 at 10-11 (citing *McQuiggin v. Perkins*, 133 S.Ct. 1924, 1935-36 (2013) (requiring a "credible" claim of actual innocence based on new evidence which shows "that it is more likely than not that no reasonable juror would have convicted him.")).

## II. CONCLUSION

With such a criminal record, Joseph Hagan James was properly given an enhanced sentence under 18 U.S.C. § 924(e)(1). His § 2255 motion is without merit and should be **DENIED**.

---

[4] The Court entered judgment against James on January 18, 2006. Doc. 17. Since he filed no appeal, his conviction became final and § 2255(f)'s one-year clock began to tick on January 28, 2006. *See Mederos v. United States*, 218 F.3d 1252, 1253 (11th Cir. 2000) (where no timely notice of appeal is filed and motion for leave to file out of time appeal is denied, judgment of conviction final on expiration of deadline for filing notice of appeal); Fed. R. App. P. 4(b)(1)(A)(i) (in 2006, defendants were required to notice their appeals within 10 days from the entry of judgment). He did not file the present § 2255 motion, however, until June 27, 2016, which is nearly a decade too late.

[5] Equitable tolling can, in exceptional circumstances, allow untimely motions to proceed. *See Holland v. Florida*, 560 U.S. 631, 649 (2010). So can a "fundamental miscarriage of justice" that "has probably resulted in the conviction of one who is actually innocent." *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931 (2013). Movant invokes neither tolling nor the miscarriage exception, and offers no new evidence or exceptional circumstances to trigger either.

This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonett v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. U.S.*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED,** this ___19th___ day of January, 2017.

*/s/ J.R. Smith*
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA